**TURNER et al. v. HASSETT, Collector of Internal Revenue.**

No. 808.

District Court, D. Massachusetts.

March 31, 1941.

Frank S. Deland and Wm. D. Turner, both of Boston, Mass., for plaintiffs.

Edmund J. Brandon, U. S. Atty., and C. Keefe Hurley, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and James P. Garland, Sp. Assts. to Atty. Gen., for defendant.

McLELLAN, District Judge.

The plaintiffs seek recovery of estate taxes paid by them as executors of the will of Lawrence W. Morgan to the defendant. Two grounds for attack upon the assessment are stated in the complaint but the second ground, having been abandoned by waiver at the trial and in the plaintiffs' brief, requires no description or comment. The pleadings, as well as the statements of counsel for each side at the trial, show that the question left for determination is whether a transfer made by Lawrence W. Morgan to his wife some nine months before his death was made in contemplation of death within the meaning of that portion of Section 302(c) of the Revenue Act of 1926, as amended by Section 803(a) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 228, reading:

"Sec. 302 [as amended by Section 803 (a) of the Revenue Act of 1932.] The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\* \* \* \* \* \*

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribu-

tion thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title. \* \* \*"

Findings of Fact.

Lawrence W. Morgan, the decedent, attended college for two years. He had thereafter little or no business experience except such as was acquired by virtue of the ownership of a considerable estate. He devoted much of his time to yachting and racing and in business matters was prone to procrastination. In 1925, he made a will which provided for a trust as to the bulk of his estate and directed the income to be paid to his widow and upon her death to his children. In 1934, the decedent consulted a physician for a throat ailment and was sent to Dr. Leighton F. Johnson, a physician who specialized in diseases of the ear, nose and throat "with sort of a liking or special specialty of cancer" of those parts. When on October 9, 1934, Dr. Johnson first saw him, the decedent was complaining of a sore throat of about six weeks' duration. The decedent then had cancer of the throat, but Dr. Johnson did not tell him so, then or at any other time. After radium had been put in his throat, the decedent was sent on October 16, 1934, to Dr. Richard Dressler, a physician who specialized in X-ray work. It was at the Palmer Hospital that the decedent received X-ray treatment for cancer of the throat each day from October 16 to October 20, 1934, inclusive. Dr. Dressler at no time told the decedent he had cancer, but he knew that "they (the physicians) put radium grains in his throat" and that X-ray treatments were applied thereto at the Palmer Hospital. In November, 1934, decedent as a result of the treatment for cancer had a very sore throat and some difficulty in swallowing, and was given another X-ray treatment "for good measure". "As far as" Dr. Dressler "knew, he was free of all disease at that time." So thought Dr. Johnson, too. The cancer recurred, and the decedent submitted to a new series of X-ray treatments beginning October 7, 1936, and ending October 29, 1936. Dr. Dressler's notes as of the latter date read and I find that "the patient" was then "having a great deal of pain locally" (in his throat).

The decedent delivered to his wife securities valued at approximately $45,000,

a portion thereof about October 23, 1936, when undergoing the cancer treatments above described, and the rest on or about November 10, 1936. At this time he believed, as was the fact, that transfers of not exceeding $45,000 involved no gift tax. He said he wanted to keep within an amount that would be exempt from taxation. He said also in substance he wanted to make the gift "because he thought, for one thing, it would be a good thing for Mrs. Morgan to learn how to handle securities, and for another thing he wanted to make a gift to her, as far as he could, because he understood that the gift tax was going to be increased and he wanted to take advantage of the time before then." I am not at all satisfied, however, that the decedent did not understand the probable effect of the gift upon the tax which his estate might have to pay. Nor am I satisfied upon all the credible evidence, such was not the controlling motive for the transfers.

Mrs. Morgan testified in substance and I find that income from the securities transferred to her was used for household expenses, that she paid Mr. Morgan's bills too, that she considered she had to use the securities for household expenses, adding: "It was never considered it was to be spent on me. For our children and our household expenses." Before making the transfers the decedent told Mrs. Morgan in substance to make her will leaving her property to him and on November 19, 1936, she made a will which constituted a substantial compliance with this direction. (The defendant's brief suggests that in view of the evidence on which the findings contained in the foregoing paragraph are based that the securities in question were transferred in trust for payment of his obligations and so were the property of the decedent at the time of his death.)

The decedent having finished a series of X-ray treatments for cancer on October 29, 1936, and having completed the gift to Mrs. Morgan on November 10, 1936, went shooting and then to Palm Beach, where according to testimony which I see no occasion to doubt, he looked well, participated in social life and enjoyed it. His disease was, however, progressive in its effect, he suffered increasing pain in the spring of 1937, and died August 14, 1937, as a result of the disease with which he had long been afflicted.

The plaintiffs, having duly qualified as executors of the decedent's will, filed an estate tax return and paid the tax shown thereon, and later filed a second return and paid the tax indicated thereby. Neither return listed the subject matter of the transfers here involved and the Commissioner made a deficiency assessment in the sum of $9,107.75 which was due in large part to treating as part of the decedent's estate the securities which in 1936 the decedent had given to Mrs. Morgan.

The plaintiffs paid the tax and all things have happened entitling them to maintain this action, unless the transfers were made in contemplation of death, or were in trust for the donor's benefit.

In view of the statutory presumption where the donor's death ensues within two years of a transfer, the plaintiffs' burden of showing by a preponderance of the credible evidence that the tax was erroneously collected, and giving to the phrase "in contemplation of death" the meaning taught by United States v. Wells, 283 U.S. 102, 51 S.Ct. 446, 449, 75 L.Ed. 867, I find finally as follows:

The transfers here involved were made in contemplation of death and the value of the securities given by the decedent to his wife was properly included by the Commissioner in determining the decedent's gross estate for estate tax purposes.

Conclusions of Law.

In view of the statutory requirement that "the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of * * * death" see Section 302, Revenue Act of 1926, as amended by Section 803, Revenue Act of 1932, and the findings of fact heretofore made, the action can not be maintained.

Under the circumstances, it is unnecessary to consider whether, as suggested in the defendant's brief, the securities in question were transferred in trust for the payment of the donor's obligations, and for this reason constituted a part of his estate.

Judgment is to be entered for the defendant without costs.